## Tanner, et al. v. Grace, et al.

(Decided September 23, 1919.)

### Appeal from Ballard CircuitCourt.

1. Appeal and Error—Review—Sufficiency of Evidence.—A verdict of a properly instructed jury on a question of fact will not be disturbed on appeal unless its finding is flagrantly against the evidence.

2. Appeal and Error—Review—Admission of Evidence.—Exclusion of evidence is not reviewable where there is no avowal as to what the witness would say.

3. Wills—Evidence—Admissibility.—In a contest of a will on the ground of testamentary incapacity, witnesses may testify whether the testator had mind enough to know his estate, and the natural objects of his bounty and his duty to them, and to dispose of his estate according to a fixed purpose of his own, and where it appears that the witnesses saw the testator just before and after the execution of the will, and had an opportunity to observe his conduct and state of mind, the fact that they were not present when the will was executed does not render them incompetent to give an opinion on the question of testamentary capacity, but affects only the probative value of their testimony.

J. B. WICKLIFFE, M. C. ANDERSON and WM. HENDERSON for appellants.

J E. KANE and W. T. WHITE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is an appeal from a judgment of the Ballard Circuit Court, sustaining the will of W. H. Grace.

The testator was twice married. His first wife owned a small farm. The farm was sold and the proceeds, together with a few hundred dollars furnished by the testator, were used to purchase a 60 acre farm, which was conveyed to the testator and his first wife jointly.

By his first wife the testator had five children. Upon the death of his first wife the testator married Mrs. Mattie J. Mason, who was a very industrious woman. At the time of her marriage, Mrs. Mason owned considerable personal property, consisting largely of stock and provisions which were carried to the home of the testator. It is also shown that she had some money which was used in the repair or construction of her home on testator's farm. It further appears that her income from the dairy and poultry products was about $250.00 a year, and out of this income the family was largely supported. After his second marriage the testator became more prosperous, and at the time of his death his half of the sixty acre farm was worth about $3,000.00, and his personal property was worth $2,500.00 or $3,000.00.

For some time prior to the execution of the will, which occurred on March 9, 1916, testator had been afflicted with a cancer, but lived for about a year after the execution of the will.

By the will in question the testator first bequeathed to his second wife all of his personal property. He then devised to her all of his real estate to be held by her during her life, and at her death to be equally divided between his children.

It is unnecessary to review the evidence at length. Some of the witnesses for contestants, who were the testator's children by his first wife, stated that they were present on the day the will was executed and that the testator was so delirious that he did not recognize those who were present or know what he was doing. On the other hand, a number of witnesses stated that although the testator was suffering and would talk in his sleep, yet his mind was perfectly clear when he was awake. It is our rule not to disturb the verdict of a properly instructed jury on a question of fact unless its finding is flagrantly against the evidence, Williamson v. Bentley, 158 Ky. 346, 164 S. W. 951, and in this case the verdict is supported by the preponderance of the evidence.

One of the errors relied on is that the court refused to permit contestants to prove that the treatment, which the testator was undergoing for the purpose of removing the cancer, was so severe as to render him incapable of knowing anything for the time being. We fail to find where any such evidence was rejected. It is true that when the witness, Neely, was on the stand, an objection

was sustained to the following question: "Tell the jury whether or not you gave Mr. Grace the same treatment that you gave T. C. Clark;" but there was no avowal as to what the witness would say. That being true, the exclusion of the evidence is not reviewable. Hostetter, et al. v. Green, 150 Ky. 551, 150 S. W. 652.

Another ground urged for reversal is that the court permitted certain witnesses, who were not present when the will was executed, to give an opinion that the testator had testamentary capacity at that time. Under the rule prevailing in this state, witnesses may testify whether the testator had mind enough to know his estate and the natural objects of his bounty and his duty to them, and to dispose of his estate according to a fixed purpose of his own, Walls v. Walls, 99 S. W. 969; and where, as in this case, it appears that the witnesses saw the testator just before and after the execution of the will, and had an opportunity to observe his conduct and state of mind, the fact that they were not present when the will was executed does not render them incompetent to give an opinion on the question of testamentary capacity, but affects only the probative value of their testimony.

Judgment affirmed.